McKinney, J.
delivered the opinion of the court.
This is an action of debt brought by the plaintiffs as indor-sees of Moses Ridley upon a bill single.
On the 1st of April, 1845, the defendants Elizabeth Ridley, William A. Ridley, and James A. Ridley (together with S. J. Ridley, who is not sued) executed their note, under seal, for $8,560, payable three years after date, to the order of Moses *195 Ridley, at the office of Messrs. Dick & Hill, in the city of New Orleans, with interest from date, at the rate of eight per centum per annum, for value received. Underneath the names of the above named obligors, said Moses Ridley, the obligee, signed his name, without seal, as a joint maker of the note. Afterwards, said Moses Ridley indorsed said bill single to the plaintiffs, who thereupon brought this suit against the three obligors above named, jointly with Moses Ridley, the indorser; but, before declaration filed, a nolle prosequi was entered as to the latter.
The defendants demurred to the declaration, and the demurrer was sustained by the circuit court.
The demurrer presents the question — whether the note is negotiable; or, in other words, whether the plaintiffs, as indor-sees, can recover thereon: and we think it clear that they may.
By the act of 1762, ch. 9, sec. 2, promissory notes payable to any person or order, are made negotiable in the same manner as inland bills of exchange, by the custom of merchants. And by the act of 1786, ch. 4, sect. 1, “all bills, bonds, or notes for money, as well those with seal, as those without seal; those which are not expressed to be payable to order, or for value received, as those which are expressed to be payable to order, or for value received, shall be held and deemed to be negotiable, and all interest and property therein shall be trans-ferrable by indorsement, in the same manner, and under the same rules, regulations and restrictions, as notes called promissory, or negotiable notes have heretofore been.”
By this statute, bills single are made negotiable in like manner as bills of exchange, by the law merchant, or as promissory notes, by 3 & 4, Anne, ch. 9, sec. 1, and our act of 1762, ch. 9j sec. 2.
Such being the negotiable character of bills single by outlaw, the question is, whether a bill single made by several *196 obligors, and payable to the order of one of said obligors, is negotiable, and valid, and effectual in the hands of the indor-see against the other joint obligors? It is certainly true, that the obligee or payee could not himself maintain an action, at law, upon the note, because being a joint maker, he could not sue himself; nor, although by our law all joint notes and obligations are regarded as joint and several, could he maintain an action thereon against the other obligors. And, therefore, so long as it remains in the hands of the payee, or obligee, it is wholly inoperative at law, though it would be otherwise in equity. 8 Yerg. Ill, 112. But it is clear, that upon being indorsed, it will become a valid instrument, at law, as a promissory note, payable to the person named in the indorsement, or as payable to bearer, if indorsed in blank. It is an absolute promise on the part of the several makers to pay to the order of one of the joint makers a certain sum of money. When transferred to a third person, it takes effect and becomes operative as a promissory note, and is, in legal effect, if not literally, a promise to pay, to such third person, the sum of money mentioned therein.
The recent English cases upon this subject, are directly contradictory. In Flight vs. Maclean, in the Exchequer, decided in 1846, (16 Meeson & Welsby’s Rep.) it was held, that a promissory note for £500, made by the defendant, payable to his own order, arid indorsed by him to the plaintiff, was not a promissory note within the 3 & 4 Anne, ch. 9. But in the more recent case of Wood vs. Mytton, decided in the Queen’s Bench in 1847, (10 Ad. & Ellis, N. S. 806, Eng. Com. L. Rep. 59 vol. p. 804,) it was held, in direct opposition to the decision in Flight vs. Maclean, in the Exchequer, that a promissory note for £600, made by the defendant payable to his own order, and by him indorsed to another, who indorsed it to the. plaintiff, was a valid negotiable promissory note within the 3 &4 Anne, ch. 9.
*197 This latter decision, we think, is well sustained both upon principle and authority.
It is conceded that a bill of exchange drawn payable to the drawer’s own order, is valid and negotiable under the statute of Anne. By that statute, promissory notes are made negotiable as bills of exchange; and our acts of 1762 and 1786, go farther, and make not only promissory notes, but bills single also, negotiable in the same manner as inland bills of exchange. A promissory note, when negotiated by the indorsement of the payee, assumes a close resemblance to a bill of exchange, though they are not identical. The in-dorser of a note stands in the same relation to the subsequent parties as the drawer of a bill, and the maker of the note is under the same liabilities as the acceptor of a bill. Story on promissory notes, sec. 4. No reason is perceived, therefore, . why a note payable to the maker’s own order, should not be held negotiable in like manner as a bill of exchange drawn payable to the drawer’s own order.
A note, or bill, payable to a fictitious person, or to the order of such person, is negotiable; and in the hands of a Iona fide holder, will be deemed payable to the bearer, and may be declared on as such, against all the parties who knew the fictitious character of the transaction. Story on Bills, sec. 56, 200; Story on promissory notes, sec. 39.
The American cases to which we have been referred, sanction the view we have taken of this case. In Smith vs. Lusher, in the Court of Errors of New York, (5 Cowen’s Rep. 688, 705,) one partner of a firm, consisting of several members, made a note in the name of the firm for $5,000, payable to Van Santvoord or order, another member of said firm, for a debt due to the latter from the firm; and the note was indorsed by Van Santvoord to the plaintiffs who brought suit thereon, and the action was maintained. The Chancellor in delivering his opinion — which was concurred in unanimously *198 by the court — says: “If the note was void as against Van Santvoord, it was so merely by force of the principle, that he could not be bound as a debtor, where he was the creditor; but this principle has no application to the other partners.” (See also 3 Hill’s N. York Rep. 112, 115, 2 Hill’s Rep. 59.)
The distinction taken in this case of Smith vs. Lusher, is well supported, we think, in reason and by authority. Why should it be held, — more especially under our law, which regards all joint promises and obligations as being, in legal effect, joint and several — that the discharge of one of several joint makers of a note, upon a technical rule of law, based upon the twofold relation in which he stands of maker and payee, (admitting that such as to him would be the legal consequence,) should operate as a discharge of the liability of the other joint makers of the note?
Certainly, in reason, no such consequence should be admitted, in a case like the present, inasmuch as the other parties to the note, by the very act of making it payable to the order of one of the makers, have thereby invested him with the power to transfer, or in other words, to appoint the payee. And it is equally certain, that the general principles applicable to the extinguishment of debts by confusion, lead to no such consequence. In treating of the doctrine of the confusion of debts — which according to Mr. Story’s definition, is the concurrence of two adverse rights to the same thing in one and the same person, (Story on promissory notes, sec. 439.) Pothier says, the reason given for the doctrine is, that a person cannot at the same time be both creditor and debtor. Pothier on Oblig. by Evans, N. 607. But, says the same author, in order to induce a confusion of the debt, the characters, not only of debtor and creditor, but of sole debtor and sole creditor, must concur in the same person. Hence, if the creditor is only one of several heirs to the debtor of the whole, the confusion and extinction only take place in respect *199 of the part, for which he is heir; and the demand continues to subsist against the others, as to the parts, for which they are respectively liable to the debts of the deceased. Ibid, N. 612. Story on promissory notes, sec. 439, to 445.
It results, therefore, in every view of the present case, that the plaintilfs are entitled to maintain their action.
Another objection has been suggested, namely, that it is not averred that the note declared on in this case, was negotiable by the law of Louisiana. This was not necessary. If the note were negotiated in this State, it is clear that, being negotiable by our law, a right of action would be vested in the plaintiffs, although it may not have been negotiable by the law of Louisiana. This is well settled upon the general doctrine of international law. Story on conflict of Laws, sec-353. Story on Prom. Notes, sec. 176, and authorities cited, note 1.
But supposing the note to have been negotiated in Louisiana, and that by the law of that State it was not negotiable, still, we incline to the opinion, that, under our law, an action may be maintained by the endorsee against the makers. It has been held in England, that, where a promissory note was made in England, payable to, bearer, and was transferred in France, by whose law it was not negotiable, the French holder might maintain an action thereon in England, upon the provisions of the statute of Anne. 2 Barn. & Adolph. R. 385, 9 Barn. & C. 208, Story on Prom. Notes, sec. 173, and notes.
How the law of Louisiana may be in respect to the negotiability of such paper as that sued on in the present case, is a question of no practical consequence in the decision of the case in hand, as (upon the state of the case presented by the demurer, it does not arise.
The judgment will be reversed.