ELEANOR S. WILSON, *et al. v.* A. T. DALTON, *et al.*[*]

(*Nashville.* December Term, 1927.)

Opinion filed June 30, 1928.

1. CHANCERY PLEADING AND PRACTICE.      INJUNCTION.
   APPEAL.

Where the Chancellor dissolves an injunction upon a bill, answer and amended bill and grants an appeal, such appeal is not premature.   (Post, p. 216.)

Citing: Mengle Box Co. v. Lauderdale County, 144 Tenn. (17 Thomp.), 266.

2. NEGOTIABLE INSTRUMENTS.   BILLS AND NOTES.   FIC-
   TITIOUS PAYEE.

The negotiable instruments law provides, "The instrument is payable to bearer, when it is payable to the order of a fictitious or nonexisting person and such fact was known to the person making it so payable;" but "a negotiable note payable to a fictitious person is a valid instrument, and may be declared on as one payable to bearer.   But this rule applies only to paper put into circulation by the maker with knowledge that the name of the payee does not represent a real person.   The maker's intention is the controlling consideration which determines the character of such paper.   It cannot be treated as payable to bearer, unless the maker knows the payee to be fictitious, and actually intends to make the paper payable to a fictitious person."   (Post, p. 216.)

Citing: Acts 1899, ch. 94, sec. 9, sub-section 3; 8 C. J., sec. 305, p. 179; 3 R. C. L., 881; Woods v. Ridley, 30 Tenn. (11 Humph.), 197; Armstrong v. Pomeroy National Bank (Ohio), 6 L. R. A., 628; Bennett v. Farnell, 1 Campb., 130; Forbes v. Espy, 21 Ohio

St., 483; 2 Parsons, Notes & Bills, 591 and note (a); Seaboard National Bank v. Bank of America (N. Y.), 22 L. R. A. (N. S.), 499; Harmon v. Old Detroit National Bank (Mich.), 17 L. R. A. (N. S.), 514; Byles on Bills, 73; 1 Randolph Com. Paper, secs. 162, 164.

3. **CHANCERY PLEADINGS. ALLEGATIONS OF BILL. AMENDED BILL. INJUNCTION.**

Where an original bill alleges that a loan was procured from a person to whom a note, secured by a mortgage, was made payable, and an amended bill alleges that the payee of said note is, according to complainants' information and belief, based on unsatisfactory answers to inquiry as to the whereabouts of said payee, from the trustee in the mortgage and the present holder thereof, taken in connection with the allegations of the sworn answer of the present holder, that complainant admitted that this was a **bona-fide** debt and the uncontroverted fact that after the notes were placed in the hands of the present holder, the complainants repeatedly promised to pay it, the Chancellor was justified in dissolving an injunction restraining the sale under said mortgage. (Post, p. 219.)

---

*Headnotes 1. Appeal and Error, 3 C. J., section 402; 2. Mortgages, 41 C. J., section 1367; 3. Appeal and Error, 4 C. J., section 2541.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— Hon. M. C. Ketchum, Chancellor.

Hunter Wilson, for complainants, appellants.

Robert B. Goodwin, for defendants, appellees.

Mr. Justice McKinney delivered the opinion of the Court.

By the original bill filed in this cause on November 18, 1927, the complainants, Eleanor S. Wilson and husband, Hunter Wilson, sought to enjoin the sale of certain property in Memphis, on which they had executed a deed of trust to the Bank of Commerce & Trust Company, as trustee, to secure notes aggregating about $4,000, which they had executed to the defendant, A. T. Dalton.

The bill was sworn to, and alleged that complainants procured the money from Dalton; that the notes were due and unpaid, and that the trustee had advertised the property for sale, as provided in the deed of trust; that, on account of a financial depression in Memphis, they were unable to obtain money with which to meet said indebtedness, but that negotiations were pending by which they expected to pay said notes within a short time.

A *fiat* was obtained and the sale was enjoined.

Process was placed in the hands of the sheriff, on which he made the following return:

"Came to hand Nov. 18, 1927 and executed 11/18/27 on the Bank of Commerce & Trust Company, by reading this writ to S. J. Shepherd Vice President at 2:30 P. M. Nov. 18, 1927, and after diligent search and inquiry A. T. Dalton is not to be found in my County.

"Nov. 18, 1927."

On November 23, 1927, the trustee, Bank of Commerce & Trust Company, filed a sworn answer in which it averred that it had advertised the land for sale, under the terms of the deed of trust, at the request of S. M. Williamson, who had exhibited the notes involved to it, properly indorsed by A. T. Dalton.

By leave of the court, said S. M. Williamson was permitted to become a party defendant, and on November 23, 1927, filed a sworn answer, in which the following statement appears:

"He is the true and lawful holder for value of all of the unpaid notes secured by the trust deed first mentioned in said bill of complaint and has been the holder of them from a period to the beginning of the foreclosure proceedings mentioned in the bill, down to the present time, and that the defendant A. T. Dalton has no interest in said notes except, of course, his obligation upon them as endorser."

By leave of the court the complainants, on November 26, 1926, filed an amended bill containing the following recitations, to-wit:

"Complainants would state that the officer serving process in this case failed and was wholly unable to find or locate defendant, A. T. Dalton after diligent inquiry of the trustee advertising said property for sale, and of the attorney representing said trustee.

"Complainants would state that since the filing of their original bill that S. M. Williamson has asked and obtained leave of the Court and filed an answer in this case as substitute defendant for A. T. Dalton, stating 'that he is the lawful holder for value of all the unpaid notes secured by the trust deed first mentioned in the bill of complainant and has been the holder of them from a period prior to the beginning of the foreclosure proceedings down to the present time, and that the defendant, A. T. Dalton has no interest in said notes, except his obligation to pay as endorser.'

"Complainants charge as a fact that S. M. Williamson is not an innocent purchaser of said notes for value received, and that if the said Williamson ever at any time became the owner of said notes it was long after they were due, to-wit: September the 1st, 1927. Com-

plainant Hunter Wilson states that S. M. Williamson told him on November the 17th, 1927, that he was not the owner of said notes, when he was applying for an extension, and that he would have to take the application up with the owner of said notes, and would do so, and later in the same day advised complainant, Hunter Wilson that the owner of said notes would not grant the extension, and that he the said Williamson was instructed to proceed to foreclose said property by selling same as per the advertisement.

"Complainants state on information and belief, for the reasons hereinafter stated, and charge that S. M. Williamson is not the lawful holder of said notes for value, as set up in his answer."

"Complainants state that when this money, the basis of this suit, was borrowed, application for the loan was not made to A. T. Dalton, who is now and has at all times been unknown to them, but to one J. W. Canada, Attorney of Memphis, and the loan was made by the said Canada ostensibly for the said A. T. Dalton.

"Complainants state that since the notes have been due and a short time before they became due, they were found in the hands of S. M. Williamson Co., a corporation for collection, that though inquiry has been made of the said S. M. Williamson & Co. incorporated, and of the defendant, S. M. Williamson, as to who A. T. Dalton was, and where he could be found, complainants have never been able to get any information as to the identity of the said A. T. Dalton. That since answer has been filed in this case by S. M. Williamson claiming he is the lawful holder of said notes, inquiry has been made by the Com-

plainants of the attorney for the Bank of Commerce & Trust Co., trustee, and of S. M. Williamson as to who A. T. Dalton is, and where he is, and if in fact he is in existence, but no information as to the said A. T. Dalton can be ascertained.

"Complainants now state on information and belief, and after diligent inquiry to locate or identify A. T. Dalton, all of which has failed, that the said A. T. Dalton is a fictitious person, all of which was unknown to .the complainants when this loan was made, and complainants charge that the said A. T. Dalton has no legal entity in law where he can either sue or be sued, loan money or transfer notes, or foreclose trust deeds, and the note in this case made to A. T. Dalton or order is void, and that the trust deed made to the Bank of Commerce & Trust Co., trustee, to secure A. T. Dalton is void, because the said A. T. Dalton is a fictitious person, and cannot operate either by himself or agents in the collection of this note or the foreclosure of said mortgage."

*(1)* Upon the record as thus made the Chancellor upon motion dissolved the injunction and permitted complainants to appeal.

Preliminary, it is insisted that the appeal is from an interlocutory decree, and is, therefore, premature.

It was held otherwise in *Mengle-Box Co.* v. *Lauderdale County,* 144 Tenn., 266.

The motion by complainants to strike certain pleadings filed by defendants, subsequent to the order sustaining the motion to dissolve the injunction, is sustained.

*(2)* The complainants have assigned but one error, to-wit:

"Error in the action of the Chancellor in dissolving the injunction on the pleadings, especially the allegations in

the amended bill that the payee, A. T. Dalton, was a non-existent person or fictitious person, and the note was void and the mortgage void.''

Subsection 3 of section 9 of chapter 94 of the Negotiable Instruments Law of 1899 is as follows:

''The instrument is payable to bearer, when it is payable to the order of a fictitious or nonexisting person and such fact was known to the person making it so payable.''

Under the title of bills and notes the following appears in 8 C. J., section 305, 179:

''Whether the paper is to be considered as having a fictitious payee depends on the knowledge or the intention of the party against whom it is attempted to assert the rule, and not on the actual existence or nonexistence of a payee of the same name as that inserted in the instrument, so that on the one hand a real person may be fictitious, and on the other hand a nonexisting person may be real within this rule. Both before the enactment of the Negotiable Instruments Law, and by the express provisions thereof, an instrument is not payable to bearer on the ground that the payee is a 'fictitious or nonexisting person,' unless such fact was known to the person making it so payable. Where a note is executed to one in other than his real name, he may recover by showing that he was the payee intended.''

In 3 R. C. L., 881, it is said:

''A negotiable note payable to a fictitious person is a valid instrument, and may be declared on as one payable to bearer. But this rule applies only to paper put into circulation by the maker with knowledge that the name of the payee does not represent a real person. The maker's intention is the controlling consideration which determines the character of such paper. It cannot be

treated as payable to bearer, unless the maker knows the payee to be fictitious, and actually intends to make the paper payable to a fictitious person.''

In *Armstrong* v. *Pomeroy National Bank* (Ohio), 6 L. R. A., 628, it is said:

''The doctrine that a bill payable to a fictitious person or order is equivalent to one payable to bearer had its origin in these cases, which all grew out of bills drawn by Levisay & Co., bankrupts, payable to a fictitious person or order, and were accepted by Gilbert & Co.; but it will be noticed that the holding in each case was upon the express ground that the acceptor knew at the time of his acceptance that the bill was payable to a fictitious person; and but for this fact the fictitious indorsement would have been held to be a forgery—some of the judges expressing a doubt whether it was not so, although its character was known to the acceptor.'' 3 T. R. 181.

''These cases will be found reviewed in a note to *Bennett* v. *Farnell,* 1 Campb., 130. It was held in this case that a bill made payable to a fictitious person or order is neither payable to the order of the drawer or bearer, but is completely void. But in the *addendum* to the case at page 180c of the report, Lord Ellenborough observes that this holding must be taken with this qualification: 'Unless it can be shown that the circumstance of the payee being a fictitious person was known to the acceptor.' The rule is stated with this qualification in Byles on Bills, 73. See also, to the same effect, *Forbes* v. *Espy,* 21 Ohio St., at p. 483. 1 Randolph, Com. Paper, sections 162, 164. 2 Parsons, Notes and Bills 591 and note (a).''

In *Seaboard Nat. Bank* v. *Bank of America* (N. Y.), 22 L. R. A. (N. S.), 499, it is said:

"It is uniformly recognized law that negotiable paper, the payee of which does not represent a real person, cannot be deemed payable to bearer unless the paper was put into circulation by the maker with the knowledge that the name of the payee does not represent a real person. The fictitiousness of the payee and the knowledge of the maker must concur."

And in *Harmon* v. *Old Detroit Nat. Bank* (Mich.), 17 L. R. A. (N. S.), 514, the court said:

"This rule applies only to paper put into circulation by the maker with knowledge that the name of the payee does not represent a real person. The maker's intention is the controlling consideration which determines the character of such paper. It cannot be treated as payable to bearer unless the maker knows the payee to be fictitious, and actually intends to make the paper payable to a fictitious person. . . . There are authorities to the contrary in this country, but the clear weight of authority in both England and the United States is in favor of this rule."

To the same effect is the holding of this court in *Woods* v. *Ridley*, 30 Tenn., 197.

(3) It being specifically charged in the amended bill that complainants did not know that the payee in said notes was a fictitious or nonexisting person at the time they executed said notes, it would seem that, under these authorities, the notes and mortgage would be unenforceable if, in fact, the payee was fictitious or nonexisting.

From a careful reading of the record, however, we are unable to say that the allegations of the amended bill, when the record as a whole is considered, is sufficient to justify us in holding the Chancellor in error in dissolving the injunction.

It should be recalled that complainants in their sworn bill alleged that they actually got this money from the payee, Dalton, and that they owe same to him. Furthermore, the sworn answer of the trustee sets forth that said notes were indorsed by the payee, Dalton.

The sworn answer of Williamson states that said notes were indorsed by Dalton, and that he is the holder thereof for value.

It makes no difference whether Williamson acquired them before maturity, since that is not an issue in this case, for the reason that complainants admit that said notes are genuine, and that they have not paid them.

The complainants do not specifically charge that said notes are not indorsed by Dalton, but only do so inferentially by charging upon information and belief that Dalton was a fictitious person. The substance of complainants' charges are that through Col. J. W. Canada, a reputable member of the Memphis bar, they procured this loan from Dalton; that process was issued to the sheriff and returned the same day, reciting that after diligent search he was unable to locate Dalton; that he inquired of Williamson and the Bank of Commerce & Trust Company as to the whereabouts of Dalton, and received no information as to his whereabouts, and that it is upon this information that complainants charge upon information and belief that there is no such person as the payee named in said notes. The sheriff's return of not to be found in nowise supports the charge that Dalton does not exist. He may be a nonresident of Shelby County, or he might have been out of the county at the time, or the sheriff may not have made a sufficient search. Neither does the fact that Williamson, the Bank of Commerce & Trust Company and their attorney would not advise complainants as to the whereabouts of Dalton tend to prove

that he was nonexisting. According to the sworn answer, Dalton had no further interest in these notes, and it is not unlikely that these parties either did not know Dalton's whereabouts, or for some reason did not see proper to furnish this information to complainants.

A most significant circumstance is the fact that the complainants alleged that they procured this money from Dalton, through his attorney, Col. Canada, and yet they did not inquire of Col. Canada as to Dalton's existence and his place of residence.

In its finality, the substance of the complainants' charge is that they asked two or three parties where they could find Dalton, and they did not advise them as to his whereabouts, and the sheriff made a return that he could not find him in Shelby County. And upon this lack of information they charged that he was fictitious and nonexisting.

As previously stated, in view of the allegations of the original bill, the sworn answer of S. M. Williamson and the Bank of Commerce & Trust Company, the fact that complainants did not undertake to locate Dalton from a most reputable attorney, from whom they obtained the loan, and the very meager basis for the allegation upon information and belief that Dalton was a fictitious and nonexisting person, when considered in connection with the admission that this is a *bona-fide* debt and the uncontroverted fact that after these notes were placed in the hands of S. M. Williamson, the complainants repeatedly promised to pay them, we are of the opinion that the Chancellor was justified in dissolving the injunction, and his decree will be affirmed.